UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL ALLEN HUFF,

    Plaintiff,

v.

ELKHART COUNTY SHERIFF *et al.*,

    Defendants.

CAUSE NO. 3:20-CV-1054-DRL-MGG

OPINION AND ORDER

Michael Allen Huff, a prisoner without a lawyer, filed an amended complaint. ECF 8. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted). A plaintiff can plead himself out of court

if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Mr. Huff's original complaint was dismissed because it failed to state any claims. *See* ECF 7. Specifically, the court found he had not plausibly alleged his three-week detention in the Elkhart County Jail—after he had allegedly been ordered released on his own recognizance and on bond in two state court criminal matters—was objectively unreasonable considering his continuing detention in another case. *Id.* at 5–7. The court also determined he had not plausibly alleged any of the named defendants were personally involved in the assault or property loss he suffered at the Elkhart County Jail, and the court concluded his claim regarding the "head commissary lady" placing him in segregation was impermissibly vague. *Id.* at 7–8.

In his amended complaint, Mr. Huff, who is currently a prisoner at the Indiana State Prison (ISP), is suing three defendants for events that happened at the Elkhart County Jail. He alleges that on October 16, 2018,[1] he was transferred to the Elkhart County Jail for a court date in two of his state criminal cases.[2] He claims he was ordered released

---

[1] Mr. Huff's original complaint was docketed on December 28, 2020, and the envelope has a mail-stamped date of December 21, 2020. ECF 1 at 5. However, he allegedly signed his complaint and deposited it into the prison mail system on October 16, 2020, at 4:30 AM. *Id.* at 4. Although the timing raises questions and possible statute of limitations concerns, at this stage of the litigation Mr. Huff is entitled to the prison mailbox rule, so his original complaint is deemed filed as of October 16, 2020. *See Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (describing prison mailbox rule). His amended complaint was docketed on September 7, 2021, and it was deposited into the prison mail system on August 22, 2021. ECF 8 at 4.

[2] He does not list the cause numbers in his amended complaint, but according to his original complaint, those cause numbers were: 20H02-1605-CM-00334 and 20D04-1701-F6-00029. *See* ECF 1 at 2.

in one of the cases on October 17, 2018, and on October 18, 2018 in the second case for which he posted bond that same day. He alleges the Elkhart County Jail Commander told him that, because his next court date was only a few weeks away, he was going to be held there despite the fact that the court had ordered his release related to those two cases.

During the approximately three weeks he was at the Elkhart County Jail, Mr. Huff alleges, "I lost all of my legal and religious material I'd taken with me to Elkhart" as well as his clothing and some commissary items he had purchased while there. ECF 8 at 2–3. He also alleges he informed the "head commissary lady" via email that he was going to sue her because she took an additional $0.77 off his account for a razor he never received. *Id*. at 3.[3] According to Mr. Huff, she wrote him up for threatening and asked a classification officer to have him moved to segregation on October 25, 2018. On October 31, 2018, he was removed from segregation by the Jail Commander, but he was placed in a different cell and "lost my spot on the church count letter because of this." *Id*.

Mr. Huff states he was returned to the Pulaski County Jail on November 9, 2018. However, because of the allegedly unlawful three-week detention in the Elkhart County Jail, Mr. Huff claims that, when he arrived at the Pulaski County Jail, he discovered:

> I had lost my cell, lost my Bunkie, lost a large portion of my property, lost mail, missed visits, missed grievance deadlines, was removed from my class that was part of my sentence in 66C01-1611-F4-9, missed church services, and more due to this unlawful action/decision that neither the sheriff nor jail commander had legal authority to make.

---

[3] Specifically, Mr. Huff states, "I told the commissary lady through e-mail that I will sue over $0.77." ECF 8 at 3. He also indicates she wrote him up for "saying I planned to sue." *Id*.

3

*Id*. Mr. Huff has sued the Elkhart County Sheriff, the Elkhart County Jail Commander, and the "Head Commissary Lady" for monetary damages. *Id*. at 4.

The Fourth Amendment applies to "wrongful pretrial custody" claims. *See Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020). In *Williams*, the plaintiffs—all of whom had been arrested and charged with felonies—alleged the Cook County Sheriff held them in jail for up to two weeks after the Cook County trial courts had ordered them released on bail subject to electronic monitoring. *Id*. at 629–30. According to the plaintiffs, the sheriff did so because he disagreed with the state's new pretrial detention policies that favored broad access to pretrial release. *Id*. at 629. The district court dismissed the suit, finding the plaintiffs had not stated a claim as the "Fourth Amendment does not apply because probable cause was uncontested and pretrial 'conditions of confinement' are governed by the Due Process Clause." *Id*. at 632. The court of appeals disagreed, holding that, after *Manuel v. City of Joliet*, --- U.S. ----, ----, 137 S. Ct. 911 (2017), the Fourth Amendment applies when wrongful pretrial custody itself—as opposed to wrongful pretrial conditions of confinement—is challenged. *Id*. In so finding, the court recognized probable cause was not at issue,[4] and it analogized detention after court ordered bail-release to holding an individual in jail after a non-prosecution decision (or acquittal or conviction)—both situations potentially being violative of the Fourth Amendment. *Id*. at 633. The court noted "a core function of the Fourth Amendment is to put neutral decision-

---

[4] "This case is not about the probable cause standard. No one in this case disputes the existence of probable cause to detain each plaintiff. The dispute is over procedure. . . . [T]he Sheriff arrogated to himself a decision that was not his to make" *Id*. at 632.

4

makers between unchecked official discretion and invasions of private liberty by search or seizure" and determined the decisions to substitute prolonged detentions for court-ordered release on specified terms were not the sheriff's to make. *Id.* at 633–34. Once legally authorized detention has ceased, "whether by acquittal after trial, release on recognizance bond, completion of jail time in the sentence or otherwise," the Fourth Amendment provides that further detention is lawful only to the extent the time leading up to release is reasonable in any given case. *Id.* at 635 (citing *Driver v. Marion Cty. Sheriff*, 859 F.3d 489, 491 (7th Cir. 2017) and *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 514–15 (7th Cir. 2009)). In conclusion, the court determined the plaintiffs had stated a proper Fourth Amendment claim, noting "[t]he Fourth Amendment does not require any particular administrative arrangement for processing bail admissions. It does require, however, that whatever arrangement is adopted not result in seizures that are unreasonable in light of the Fourth Amendment's history and purposes." *Id.* at 636.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." *Manuel*, 137 S. Ct. at 917. "The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (internal quotation marks and citation omitted). Courts have "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Id*.

Here, Mr. Huff claims he was unlawfully detained by the Elkhart County Jail for approximately three weeks. He cited to two state court criminal cases in his original

5

complaint, in which he alleges the court ordered him released on his own recognizance and on bond. The publicly available state court docket[5] in one of those cases does show a hearing was held on October 18, 2018, in which Mr. Huff appeared by video and was released on his own recognizance by the court, with a later hearing set for March 25, 2019. *See State v. Huff*, 20H02-1605-CM-000334 (filed May 24, 2016), docket sheet available at: https://public.courts.in.gov/mycase/#/vw/Search. The state court docket in the other case is less clear. There, a journal entry on September 19, 2018, notes Mr. Huff was not present for a previous hearing because he was incarcerated in the Pulaski County Jail. *See State v. Huff*, 20D04-1701-F6-000029 (filed Jan. 5, 2017), docket sheet available at: https://public.courts.in.gov/mycase/#/vw/Search. A transportation order was issued that same day, and the hearing was continued to October 17, 2018. *Id*. On October 17, 2018, Mr. Huff was produced via video by the Elkhart County Sheriff's Department, and a hearing was held during which Mr. Huff entered a guilty plea to Theft, a Level 6 felony. *Id*. The cause was set for sentencing on November 7, 2018; no mention was made of Mr. Huff being released at that time. *Id*. On November 7, 2018, a sentencing hearing was held, and a judgment was entered. *Id*. Mr. Huff was sentenced to 365 days in jail, with a credit of 10 days, and 339 days of his sentence to be suspended. *Id*. At that time, Mr. Huff was "ordered released under this cause. Bond released. PD withdrawn. All per order." *Id*.

---

[5] The court is permitted to take judicial notice of public court records. *See* Fed. R. Evid. 201; *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts.").

Mr. Huff is adamant his version of events is correct.[6] At this stage, the court must accept his assertions as true. However, even crediting those allegations—namely, that he was "ordered released" in one case on October 17, 2018, and in the other case the next day—his claim would still fail. As noted in the court's previous order:

> What Mr. Huff does not directly acknowledge—but tangentially references when he notes he was 'transferred' (ECF 1 at 2) to the Elkhart County Jail on October 16, 2018—is that he was ordered detained in a separate cause number before, during, and after the events in question. *See State v. Huff*, 66C01-1802-F4-000006 (filed Feb. 23, 2018), docket sheet available at: https://public.courts.in.gov/mycase/#/vw/Search. On March 2, 2018, the state charged Mr. Huff with being a Prisoner Possessing a Deadly Weapon, Battery Against a Public Safety Official, and Intimidation. *Id*. Bond was set in the amount of $40,000, and there is no indication Mr. Huff paid that bond or was otherwise ordered released. *Id*. The docket references various transport orders between jails (and later the Department of Correction) throughout 2018 and 2019, but at no point does it note Mr. Huff was not incarcerated. *Id*. The case is still pending; as of the date of this order, a jury trial is scheduled for late 2021.[7] *Id*.

ECF 7 at 6. The allegations in his amended complaint—wherein he admits he was transferred *back* to the Pulaski County Jail on November 9, 2018, where he had been incarcerated prior to being transported to the Elkhart County Jail for the hearings—make it clear that Mr. Huff was in lawful custody before, during, and after the events in

---

[6] He states, "If the court papers differ from what I say in paragraphs 1, 2, 3, or 8, then subpoena for the court in court recordings, or charge me with perjury. I don't care what the docket or ANYTHING/ANYONE else says." ECF 8 at 3.

[7] An updated review of the docket as of April 19, 2022, shows the case is still pending and a bench trial is set for June 1, 2022. *See State v. Huff*, 66C01-1802-F4-000006 (filed Feb. 23, 2018), docket sheet available at: https://public.courts.in.gov/mycase/#/vw/Search.

question.[8] A plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards*, 478 F.3d at 830; *McCready*, 453 F.3d at 888.

Accordingly, even if the court credits Mr. Huff's assertions that he was to be "released" by October 18, 2018, in the two cause numbers he referenced in his original complaint, Mr. Huff has not plausibly alleged the choice to keep him at the Elkhart County Jail until after the hearing on November 7, 2018, was objectively unreasonable considering his continuing detention in another case (or other cases). Essentially, Mr. Huff is claiming he should have been held in a different jail as opposed to the Elkhart County Jail, but that was not his determination to make. The sheriff or jail commander's decision to keep him there pending the quickly approaching hearing, rather than transport him back to the jail from which he came, was reasonable in light of the circumstances and violated neither the state courts' orders nor the Constitution. Thus, Mr. Huff has failed to state a claim on this ground.

Moreover, to the extent Mr. Huff is attempting to allege his due process rights were violated by the transfer from one jail to another or by his one week stay in segregation while at the Elkhart County Jail, those claims fail as well. The Fourteenth Amendment says state officials cannot "deprive any person of life, liberty, or property,

---

[8] Mr. Huff also mentions that, prior to his transport to the Elkhart County Jail, he was in a class at the Pulaski County Jail as "part of my sentence in 66C01-1611-F4-9." ECF 8 at 3. The publicly available docket for that case shows he pled guilty to a felony intimidation charge and was sentenced to a term of incarceration of twenty-four (24) months at the Pulaski County Jail on May 25, 2018 (the order for which was entered on August 2, 2018). *See State v. Huff*, 66C01-1611-F4-000009 (filed Nov. 2, 2016), docket sheet available at: https://public.courts.in.gov/mycase/#/vw/Search.

without due process of law[.]" U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005) (prisoner not entitled to process for discipline of two months in segregation, the loss of prison job, the loss of privileges, and a transfer to another facility); *Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004) (claims that inmate "lost his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs and that the disciplinary report has damaged his prison record" were not significant enough to trigger due process concerns) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (transfer to a substantially less agreeable prison and an unfavorable classification for rehabilitative programs did not require due process)). Inmates have no liberty interest in avoiding short-term transfer to segregation, *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008), or in avoiding restrictions "that do not substantially worsen the conditions of confinement," *White v. Scott*, 849 F. Appx. 606, 608 (7th Cir. 2021); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

Here, Mr. Huff alleges he lost his preferred cell and bunkmate at the Pulaski County Jail and that he missed visits, mail, and church services due to the three-week extended stay at the Elkhart County Jail. These alleged deprivations are not "sufficient

9

collateral consequences" to establish any due process violations. *Cochran*, 381 F.3d at 641. Moreover, he does not allege the one week he spent in segregation presented any "atypical and significant hardship[s]." *Sandin*, 515 U.S. at 484; *see also Lekas v. Briley*, 405 F.3d 602, 610–14 (7th Cir. 2005) (even ninety-day placement in disciplinary segregation where inmate was "prohibited from participating in general population activities," deprived of contact with other inmates, and barred from "educational and work programs" did not trigger due process concerns). Therefore, Mr. Huff has not stated any claims on these grounds either.

Mr. Huff also claims his legal and religious materials, clothing, and commissary items were lost while he was at the Elkhart County Jail. However, he does not plausibly allege any of the named defendants were aware of or responsible for those losses. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Moreover, to the extent he is attempting to state a due process claim with regard to these items, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's Tort Claims Act, *see* Ind. Code § 34-13-3-1

10

*et seq.*, and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Therefore, Mr. Huff has not stated any claims with regard to the loss of his property.

Finally, Mr. Huff claims the "head commissary lady" retaliated against him. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). The law recognizes that due process claims and retaliation claims—even when both relate to disciplinary sanctions—are analyzed differently, in part, because "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Hoskins*, 395 F.3d at 375. It is undisputed that "[a] prisoner has a First Amendment right to make grievances about conditions of confinement, including the mistreatment of his personal property." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (citing *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (addressing a prisoner's grievance about a guard's tampering with his typewriter)). That right must be exercised "in a *manner* consistent with his status as a prisoner." *Id*. (emphasis original, citation omitted).

11

In *Bridges v. Gilbert*, 557 F.3d 541, 554 (7th Cir. 2009), an inmate alleged he had communicated a protected grievance when he "threatened the Defendant that he was going to file a grievance against her because it was inappropriate for her to kick his cell door, turn his lights on and off, and slam his cell trap while he was sleeping." In rejecting that argument and affirming the district court's dismissal order, the court of appeals noted, "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance." *Id*. at 555 (emphasis in original); *see also Clark v. Reed*, 772 Fed. Appx. 353, 355 (7th Cir. 2019) (citing *Bridges* and finding qualified immunity applied to shield the defendant because it had not been clearly established "that a threat to file a grievance was protected"); *Cobian v. McLaughlin*, 717 Fed. Appx. 605, 612–13 (7th Cir. 2017) (citing *Bridges* and finding the inmate's "threat to go to court" if the prison staff member did not perform research and update his file as requested was not a protected activity); *but see Ashley v. Seamon*, 32 Fed. Appx. 747, 748–50 (7th Cir. 2002) (inmate who asked prison official whether she knew he "work[ed] in the law library" was allowed to proceed on a retaliation claim, though the court noted further development could show the threat of legal action was illegitimate).

Here, Mr. Huff alleges he told the "head commissary lady" he was going to sue her because she took $0.77 out of his account for a razor he failed to receive. He claims she immediately filed an incident report for threatening and then asked a classification officer to move him into segregation, where—beginning on October 25, 2018—he stayed for one week before the Jail Commander rectified the situation. Mr. Huff does not allege he actually filed a grievance or lawsuit regarding the commissary funds before the

12

alleged retaliation; rather, he indicates he warned the "head commissary lady" he was going to do so via email. Accordingly, it is not plausible that his threat to sue constituted a First Amendment protected activity. *See Bridges*, 557 F.3d at 555. Therefore, this claim will be dismissed as well.[9]

Because Mr. Huff's amended complaint fails to state any claims, the court DISMISSES this case pursuant to 28 U.S.C. § 1915A.

SO ORDERED.

April 19, 2022    *s/ Damon R. Leichty*
                  Judge, United States District Court

---

[9] Mr. Huff does not state a retaliation claim against the Elkhart County Sheriff or the Elkhart County Jail Commander either because he does not allege they participated in the retaliatory action. In fact, he states that the Jail Commander released him from segregation when he was informed of the events that had transpired. *See Hoskins*, 395 F.3d 372 at 375.

13